Voto particular de conformidad emitido por el
Juez Aso-ciado Señor Martínez Torres,
al cual se unen la Jueza Asociada Señora Pabón Charneco, el Juez Asociado Se-ñor Kolthoíf Caraballo, el Juez Asociado Señor Rivera García, el Juez Asociado Señor Feliberti Cintrón y el Juez Asociado Señor Estrella Martínez.
El Reglamento que aprobamos hoy contiene varios cam-bios dirigidos a hacer el funcionamiento de este Tribunal más transparente, ágil y accesible. Entre esos cambios se destacan:
• Se revisa y refuerza el mecanismo de dividir el Tribunal en salas, que contempla el Art. V, Sec. 4 de la Cons-titución de Puerto Rico, L.P.R.A., Tomo 1. Nuestro funcio-namiento regular es que el Pleno del Tribunal considera *488 los recursos ante nuestra consideración. La Constitución establece que este Tribunal puede dividirse en salas para evitar atrasos en la consideración de los casos. Según se regula ahora, las salas contribuirán a poner nuestro calen-dario judicial al día en un plazo acelerado y corto. Ahora bien, para no repetir los errores del pasado y proteger la uniformidad del Derecho que nos corresponde pautar por mandato constitucional, será el Tribunal en Pleno, y no las salas, el que decida en cuáles recursos se expedirá un auto discrecional y el que emita nuestras Opiniones.
• Un calendario judicial al día permitirá que el Tribunal dé una consideración más detenida y concienzuda a cada recurso. Además, permitirá la celebración de más vistas orales, algo que hasta ahora se ha sacrificado por la carga de trabajo que tiene el Tribunal. Las vistas orales son un mecanismo valioso para la deliberación colegiada en todo foro apelativo. Por eso, el nuevo Reglamento enfa-tiza y revisa el procedimiento para que el Tribunal pueda celebrar más vistas orales en casos meritorios. Ese es un reclamo que la comunidad ha hecho por décadas.
• Se aclaran las reglas referentes a los requisitos de forma de los recursos y sus apéndices. Hasta ahora, este asunto ha sido objeto de confusión entre los litigantes.
• Entre esos cambios se fija en 25 el límite de páginas de los recursos. Ese límite no había cambiado por décadas, a pesar de la clara necesidad de aumentarlo para relatar los procesos adicionales que ocurren en cada caso después de la creación de un tribunal apelativo intermedio. De he-cho, en ese foro el límite reglamentario ya es de 25 páginas. Con este cambio se reducen las instancias en que el Tribunal tiene que autorizar el exceso del límite regla-mentario de páginas.
• Además, por primera vez se permite la presentación de copias digitales del apéndice de los recursos. Esto sirve de balance al aumento de páginas de los recursos y, como resultado, abarata los costos que las partes tienen que in- *489 currir para litigar en este Tribunal. También protege el ambiente, al reducir el uso y almacenamiento de papel. Este es un primer paso en la tan necesaria digitalización de los procesos en nuestro sistema judicial.
He dado mi voto de conformidad al nuevo reglamento de este Tribunal porque este es fruto del trabajo colegiado de todos los integrantes de este Foro, dirigido a agilizar nues-tra tarea judicial y atender los recursos de una manera eficiente y concienzuda. Me conforta que la Juez Asociada Señora Rodríguez Rodríguez —quien participó y aportó en el proceso de aprobación del nuevo Reglamento— reco-nozca que este representa “mayor transparencia y celeridad”. Me satisface también que reconozca la laborio-sidad de los miembros de este Tribunal quienes, a pesar de las limitaciones que nuestro funcionamiento actual im-pone, lograron reducir de 792 a 544 el número de recursos pendientes en un año. Esto contrasta con manifestaciones malsanas de personas ajenas a esta Curia que cuestiona-ron el compromiso de trabajo de los miembros de este Tribunal.
Otro punto que merece destacarse es que la disidencia reconoce que con una plantilla de siete Jueces, en lugar de cuatro, este Tribunal redujo también a 128 el total de re-cursos sometidos al Pleno para decidirse en los méritos al 30 de junio de este año. Sin duda, esos números mejorarán aún más con la integración de los dos nuevos miembros del Tribunal durante todo el año. Es anticipable que si se man-tiene ese ritmo de trabajo, con nueve integrantes el Tribunal resolverá más casos en los méritos que lo que resolvió con dos Jueces menos. Sin embargo, este progreso cuanti-ficable no descarta la necesidad imperiosa de aprobar un nuevo reglamento.
En primer lugar, es claro que tenemos que atender en nuestro Reglamento el funcionamiento en salas. El Art. V, Sec. 4 de la Constitución de Puerto Rico, supra, ed. 1999, pág. 394, según fue enmendado en 1960, dispone que “[e]l *490 Tribunal Supremo funcionará, bajo reglas de su propia adopción, en pleno o dividido en salas compuestas de no menos de tres jueces”. Así pues, estamos obligados a aten-der ese asunto en nuestro Reglamento. Si la disidencia en-tiende que el funcionamiento en salas “desvirtúa” nuestro funcionamiento como foro colegiado o impone “trabas buro-cráticas” a nuestra función judicial, o es “contrario al deber institucional del Tribunal”, como señala la Jueza Asociada Señora Fiol Matta en su Voto particular, pág. 496, su dis-crepancia no es con nuestro reglamento, sino con la en-mienda de 1960 a la Constitución de Puerto Rico. Su crítica al respecto llegó 51 años tarde.
En segundo lugar, el argumento de que el funciona-miento de este Tribunal en salas contribuirá a la demora judicial ha sido rechazado por los expertos en el tema. Como señalamos en In re Solicitud Aumentar Núm. Jueces TS, 180 D.P.R. 54, 76 (2010):
La enmienda constitucional de 1960 nos brinda otra herra-mienta para atender el problema de la demora judicial. Como tal, debe ser empleada para atajar el problema que hoy nos ocupa. Como señaló la Escuela de Administración Pública de la Universidad de Puerto Rico en su informe a la Asamblea Constituyente, el trabajo de este Tribunal
"... es tan complejo que la capacidad para trabajar en sec-ciones ayudaría a acelerar el despacho de los asuntos; y al mismo tiempo a disminuir notablemente la posibilidad de que se dicten decisiones por un solo juez. Una corte sobrecargada tiende a delegar la redacción de opiniones en un solo miembro, y los otros, por lo tanto, concurren pasivamente, a menos que haya una profunda diferencia de criterio.” Escuela de Admi-nistración Pública de la Universidad de Puerto Rico, La nueva Constitución de Puerto Rico: informes a la Convención Consti-tuyente, San Juan, Ediciones de la U.P.R., 1954, pág. 467.
Contrario a la impresión expuesta en el Voto particular de conformidad y disidente de la Juez Asociada Señora Ro-dríguez Rodríguez,
“[e]l funcionamiento del Tribunal en salas, en unión a las otras reformas efectuadas a partir del 1958 [como la composición de *491 nueve jueces], permitió finalmente la descongestión del calendario.” Comité para el Estudio y la Evaluación del Sis-tema Judicial, [Informe al Tribunal Supremo de Puerto Rico, abril de 1965, Parte I], pág. 4. Eso es un hecho verificable que no puede ser borrado de nuestra historia por otras considera-ciones ajenas a la consecución del bienestar de nuestro sis-tema judicial. In re Solicitud Aumentar Núm. Jueces TS, supra, pág. 76.
Con la aprobación del nuevo Reglamento, tendremos las herramientas necesarias para reimplantar aquellas estra-tegias que dieron resultado en el pasado y poner en vigor estrategias nuevas según lo aconseje la experiencia, con el propósito de agilizar y profundizar en la tarea de impartir justicia.
Es indudable que la existencia de 544 casos pendientes al comenzar este año fiscal es una mejoría en comparación con el pasado, pero demuestra que la congestión en el ca-lendario de este Tribunal es real; 544 casos pendientes no es una cifra pequeña. Demuestra que la ampliación de la plantilla de este Tribunal era útil y necesaria.
“La dilación en la emisión de una decisión judicial es ... contraria al concepto mismo de justicia.” F. Hernández Denton, La administración eficiente de la justicia, 77 Rev. Jur. U.P.R. 915, 917 (2008). El progreso logrado este año no está en duda; la posible división en salas de este Tribunal responde a la necesidad de agilizar el proceso para poner este Tribunal al día en el menor lapso de tiempo posible. Para quien comparece ante nosotros, la congestión en nues-tro calendario es un problema apremiante cuya solución no es resignarnos y albergar la esperanza de que al ritmo de trabajo actual la congestión se elimine por inercia algún día.
En tercer lugar, el nuevo Reglamento garantizará que sea el Tribunal en Pleno y no una sala la que decida si se expide un auto discrecional. Las salas dispondrán de los recursos que a su juicio no ameriten la consideración dete-nida del Tribunal y recomendarán al Pleno expedir el auto *492 en los casos que consideren meritorios. En los demás recur-sos denegados se dispone que cada moción de reconsidera-ción se refiera a una sala distinta, de manera que se ga-rantice que al final del proceso todos los integrantes del Tribunal habrán considerado el recurso. Véase Regla 4 del nuevo Reglamento del Tribunal Supremo.
Además, si cualquier Juez considera que el Pleno del Tribunal debe atender un recurso, puede referirlo al Pleno. Si la mayoría lo acepta, puede acoger la recomendación y atender el recurso en una reunión extraordinaria, que con-vocará la mayoría del Tribunal o el Juez Presidente. Regla 6(b). Así pues, el Reglamento sí “contempla la posibilidad de que la mayoría de la totalidad de los miembros del Tribunal puedan ser persuadidos de que los ... jueces ... que denegaron el recurso en la sala particular tomaron una decisión incorrecta”, contrario a lo que aduce la Juez Aso-ciada Señora Fiol Matta en su Voto particular, pág. 496. (Enfasis en el original.)
El mecanismo adoptado en el nuevo Reglamento —que no hemos implantado todavía pero que la disidencia re-chaza de antemano— busca garantizar que sea todo el Tribunal y no una fracción de sus integrantes quienes ejerzan la función de pautar el Derecho en esta jurisdicción. Salva-guarda precisamente el funcionamiento colegiado del Tribunal para el que la disidencia reclama protección. No hay duda de que decidir cuál caso aceptar y cuál no, es parte fundamental de esa tarea.
En fin, atendemos así la crítica al funcionamiento en sa-las en el pasado, que funcionaban como tribunales indepen-dientes entre sí. “Aunque indudablemente ayuda [ban] a agi-lizar el proceso decisorio lo ... [hacían] a costas de la uniformidad del Derecho”. A. Negrón García, Práctica ape-lativa: aspectos constitucionales, legales y reglamentarios, 42 Rev. Jur. U.I.P.R. 1, 10 (2007). Como adelantamos en In re Solicitud Aumentar Núm. Jueces TS, supra, págs. 77-78:
*493 Para evitar repetir los errores del pasado, debemos evitar que las decisiones de una sala de este Tribunal sienten precedente. El error en la década de los 60 fue ese y no la división del Tribunal en tres salas de tres Jueces. Nuestro Reglamento deberá prescribir las normas que aseguren la uni-formidad de nuestras decisiones. (Escolio omitido.)
Por eso me parece otro acto más de la “obra del absurdo” quejarse de que bajo el funcionamiento en salas que dis-pone el nuevo Reglamento haya “que esperar hasta el úl-timo viernes del mes para que el Pleno finalmente decida si se valida la decisión de expedir” que recomendó una sala. Al presente, un recurso languidece en nuestra Secre-taría por casi cinco meses en espera de que el Tribunal en Pleno lo atienda. La experiencia de todos los años nos dice que a medida que avance el año fiscal esa demora aumen-tará y para junio de 2012 será mayor. Solamente en un mundo bizarro una espera de 30 días es peor que una de-mora de cinco meses.
En su disidencia, la Juez Asociada Señora Rodríguez Rodríguez rechaza la división en salas porque su efectivi-dad no se ha demostrado de forma empírica. Esa opinión demuestra que “[c]on demasiada frecuencia nos aferramos a los clichés de nuestros antepasados. Sometemos todos los datos a un conjunto prefabricado de interpretaciones”. (Traducción nuestra.) Discurso del Presidente John F. Kennedy en la ceremonia de graduación de la Universidad de Yale, pronunciado el 11 de junio de 1962, Public Papers of the Presidents of the United States, 1962, pág. 234.(1) Aun-que me parece obvio que es imposible documentar lo que no ha sucedido todavía, debo destacar que el mecanismo que contiene el nuevo Reglamento se fundamenta en la experiencia de las salas en cuanto al manejo más eficiente del calendario judicial sin cometer los errores del pasado que afectaron la uniformidad de la norma al permitir que cada sala expidiera y sentara precedentes judiciales.
*494 Con la retórica a la que nos tiene acostumbrados, la Juez Asociada Señora Rodríguez Rodríguez rechaza ese fundamento empírico. Tiene todo el derecho a expresarlo como le plazca. En cambio, prefiero ejercer el tempera-mento judicial que se espera de todos los Jueces. Mi Norte es y será colaborar para lograr una administración judicial más eficiente sin menospreciar el prestigio de mis compa-ñeras y compañeros Jueces. Canon 6 de Etica Judicial, 4 L.P.R.A. Ap. IV-B.
El Reglamento que hoy adoptamos y que regirá a partir del año natural 2012 nos provee los mecanismos necesarios para operar de una manera más transparente y eficiente sin sacrificar la uniformidad de nuestros precedentes. Nos permitirá aprovechar la presencia de nueve Jueces para agilizar la consideración de los recursos y poner nuestro calendario al día a un ritmo de trabajo acelerado pero concienzudo. A su vez, garantiza que la decisión de atender un recurso sea el producto de la deliberación colegiada en-tre todos los miembros del Tribunal y no de unos pocos reunidos en una sala. Esa práctica ineficiente y criticada ocurre hoy durante el receso de verano y debemos deste-rrarla como rémora del pasado.
Con el Reglamento que aprobamos hoy podremos dedi-car la consideración debida a los recursos que ameriten nuestra intervención, sin que la congestión del calendario sea una consideración al expedir o denegar la expedición de un auto discrecional. Además, todos los integrantes de este Tribunal tendremos el tiempo necesario para estudiar con detenimiento los planteamientos de las partes y el De-recho aplicable, no solo mediante el estudio de los alegatos, sino también mediante la celebración de un número mayor de vistas orales. Esa es otra práctica que contribuye a ha-cer justicia, pero que se ha sacrificado hasta ahora por con-sideraciones de eficiencia ante un calendario judicial abultado.
*495 La solución al problema de demora en este Foro es apro-vechar al máximo las herramientas que la Constitución nos da. “[N]o hay duda de que el Tribunal en pleno tiene mucho que aportar a la modernización del sistema y al ajuste de sistemas y procedimientos, mediante su extenso poder de reglamentación y de [emitir] decisiones cónsonas con los objetivos mayores del sistema.” Juramentación Juez Asoc. Rodríguez Rodríguez, 162 D.P.R. XCI, CX (2004). Descartarlo todo y colocar una retranca al cambio no es la solución.
Voto particular emitido por la Jueza Asociada Señora Fiol Matta.
Estoy conforme con el Reglamento, según adoptado, a excepción del funcionamiento en salas de despacho estable-cido en la Regla 4(b).
Esta regla, según ha sido adoptada, establece que una sala de despacho podrá, por acuerdo de al menos la mitad de sus integrantes, recomendar al Pleno del Tribunal la expedición de un recurso discrecional. Sin embargo, no pro-vee un mecanismo similar para que, cuando el recurso sea denegado por el voto mayoritario de una sala particular, el juez o la jueza que quede en minoría pueda llevar el asunto a la consideración del Tribunal en su totalidad. En ese caso, la única manera en que una parte puede lograr que la totalidad de los integrantes del Tribunal Supremo pasen juicio sobre su recurso es presentando hasta dos mociones de reconsideración, con el costo que ello conlleva para las partes y los retrasos que producen en la consideración de la controversia. Si una parte decide no presentar una recon-sideración, se denegaría su recurso con el voto de sola-mente dos integrantes del Tribunal. El procedimiento adoptado no contempla la posibilidad de que la mayoría de *496 la totalidad de los miembros del Tribunal puedan ser per-suadidos de que los dos jueces o juezas que denegaron el recurso en la sala particular tomaron una decisión incorrecta. De esa forma, un recurso podría ser denegado por dos jueces o juezas aunque, posiblemente, la mayoría del Tribunal tenga un criterio contrario. Por esa razón, no puedo avalar la aprobación de las modificaciones a esta regla.
Me preocupa, además, que recurrir a salas de despacho se convierta en el modo ordinario de trabajo del Tribunal. Entiendo que es un derecho del Pueblo, una prerrogativa individual de cada juez o jueza y una obligación institucio-nal del Tribunal en conjunto operar como una sola unidad, y no como tres tribunales pequeños. Si bien el Reglamento vigente hasta hoy reconocía la facultad del Tribunal de funcionar en salas, nunca hemos recurrido a esta práctica, después de la difícil experiencia de las salas constituidas en la década de los años 60. Desde entonces, a excepción de las salas de verano motivadas por el receso anual o las salas especiales producto de la inhibición de algunos jueces o algunas juezas, tomamos nuestras decisiones, incluso las de despacho, como un solo Tribunal.
La razón para ello, que me parece evidente, es que el funcionamiento en salas para atender el trabajo corriente del Tribunal, y como cuestión ordinaria, es contrario al de-ber institucional del Tribunal de tomar todas sus decisio-nes, ya sea expedir un caso o disponer de éste en los méri-tos, con la participación de todos los jueces y todas las juezas que lo componen. Como hemos hecho desde que abandonamos el funcionamiento en salas hace varias déca-das, éstas únicamente deben emplearse en situaciones ex-traordinarias, ya sea para la disposición de recursos o, como se dispone en la nueva Regla 4(b), para pasar juicio sobre la expedición de un auto discrecional.

 “Too often we hold fast to the clichés of our forebears. We subject all facts to a prefabricated set of interpretations.”